UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| ROSARIO MEZA-LOPEZ, | ) | 3:11-cv-00891-HU |
| Plaintiff, | )<br>) | |
| vs. | )<br>) | FINDINGS AND<br>RECOMMENDATION |
| DEUTSCHE BANK NATIONAL TRUST<br>COMPANY, AS TRUSTEE, FOR AMERICAN<br>HOME MORTGAGE ASSET TRUST 2007-3,<br>MORTGAGE-BACKED PASS-THROUGH<br>CERTIFICATES SERVICES 2007-2<br>ASSIGNEE, AND FIDELITY NATIONAL<br>TITLE INSURANCE COMPANY, | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

———————————————————

Terrance J. Slominski
David W. Venables
SLOMINSKI & ASSOCIATES
7100 SW Hampton Street, Suite 101
Tigard, Oregon 97223

    Attorneys for Plaintiff

Cody M. West
Dustin R. Swanson
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128

    Attorneys for Defendant
    Deutsche Bank National Trust Company

FINDINGS AND RECOMMENDATION

1  HUBEL, Magistrate Judge:

2  **Findings and Recommendation**

3      Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6),

4  defendant Deutsche Bank National Trust Company (hereinafter,

5  "Defendant") moves to dismiss plaintiff Rosario Meza-Lopez's

6  (hereinafter, "Plaintiff") First Amended Complaint and each of the

7  claims alleged therein for failure to state a claim upon which

8  relief can be granted.    For the reasons set forth below,

9  Defendant's Rule 12(b)(6) motion (dkt. #9) should be GRANTED.

10  **Background**[1]

11      Plaintiff executed two deeds of trust on February 27, 2007, to

12  secure promissory notes she executed to purchase a home in

13  Beaverton, Oregon.  (FAC ¶ 7.)  The deeds of trust expressly name

14  American Brokers Conduit as the lender and Mortgage Electronic

15  Registration Systems, Inc. ("MERS") as the beneficiary, and state

16  that MERS "is acting solely as a nominee for Lender and Lendor's

17  successors and assigns."  (FAC ¶ 8.)

18      In early 2010, the loan servicer credited one of Plaintiff's

19  loan payments to the wrong account and told her to hold off making

20  payments until it corrected the error.  (FAC ¶ 12.)  Plaintiff was

21  also charged "a late fee and, due to this fee, caused Plaintiff's

22  subsequently timely payments to be considered late."  (FAC ¶ 12.)

23  Despite this error, MERS initiated foreclosure proceedings and a

24  sale was held on July 23, 2010.  (FAC ¶¶ 13-14.)  On September 3,

25  2010, MERS invalidated this sale by recording a "Correction of

26  _____

27      [1]  Unless otherwise indicated, the following facts are taken

28  from Plaintiff's First Amended Complaint ("FAC") filed on August
   10, 2011.  (Dkt. #5.)

FINDINGS AND RECOMMENDATION    2

1  Error(s)" document.  (FAC ¶ 16.)  A MERS representative signed the

2  document several months before the sale occurred, however.  (FAC ¶

3  16.)

4       Over six months later, on March 8, 2011, a second non-judicial

5  foreclosure process commenced on the pertinent deed of trust with

6  the filing of a second notice of default and election to sell. (FAC

7  ¶ 17.)  MERS assigned its beneficial interest under the deed of

8  trust to Defendant on March 14, 2011, as trustee for a mortgage-

9  backed security.  (FAC ¶ 18.)  On July 27, 2011, Defendant

10 purchased Plaintiff's property at a foreclosure sale.  (FAC ¶ 19.)

11                          **Legal Standard**

12      Rule 12(b)(6) allows a court to dismiss a complaint for

13 failure to state a claim upon which relief can be granted.  In

14 considering a Rule 12(b)(6) motion to dismiss, the court must

15 accept all of the claimant's material factual allegations as true

16 and view all facts in the light most favorable to the claimant.

17 *Reynolds v. Giusto*, No. 08-CV-6261, 2009 WL 2523727, at *1 (D. Or.

18 Aug. 18, 2009).  The Supreme Court addressed the proper pleading

19 standard under Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*, 550

20 U.S. 544 (2007).  *Twombly* established the need to include facts

21 sufficient in the pleadings to give proper notice of the claim and

22 its basis:

23        While a complaint attacked by a Rule 12(b)(6) motion to
          dismiss does not need detailed factual allegations, a
24        plaintiff's obligation to provide the grounds of his
          entitlement to relief requires more than labels and
25        conclusions, and a formulaic recitation of the elements
          of a cause of action will not do.
26
   *Id.* at 555 (brackets omitted).
27
        Since *Twombly*, the Supreme Court has clarified that the
28

FINDINGS AND RECOMMENDATION      3

pleading standard announced therein is generally applicable to cases governed by the Rules, not only to those cases involving antitrust allegations. *Ashcroft v. Iqbal*,---U.S.---, 129 S. Ct. 1937, 1949 (2009). The *Iqbal* court explained that *Twombly* was guided by two specific principles. First, although the court must accept as true all facts asserted in a pleading, it need not accept as true any legal conclusion set forth in a pleading. *Id*. Second, the complaint must set forth facts supporting a plausible claim for relief and not merely a possible claim for relief. *Id*. The court instructed that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1949-50 (*citing Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007)). The court concluded: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

The Ninth Circuit further explained the *Twombly-Iqbal* standard in *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009). The *Moss* court reaffirmed the *Iqbal* holding that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Moss*, 572 F.3d at 969 (*quoting Iqbal*, 129 S. Ct. at 1949). The court in *Moss* concluded by stating: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inference from

FINDINGS AND RECOMMENDATION       4

1  that content must be plausibly suggestive of a claim entitling the
2  plaintiff to relief." *Moss*, 572 F.3d at 969.

3  **Discussion**

4  **I.   Request for Judicial Notice**

5      Defendant requests that the court take judicial notice of
6  "[t]he Deed of Trust, together with all attachments and exhibits
7  thereto, recorded on March 1, 2007, in the official real property
8  records of Washington County, Oregon, as Document Number 2007-
9  023483[.]" (Request for Judicial Notice ("RJN") ¶ 1.)

10     Taking judicial notice of documents that are matters of public
11 record does not convert a motion to dismiss into a motion for
12 summary judgment. *See Zucco Partners, LLC v. Digimarc Corp.*, 552
13 F.3d 981, 991 (9th Cir. 2009) (court may consider judicially
14 noticed documents on Rule 12(b)(6) motion). Moreover, in ruling on
15 a Rule 12(b)(6) motion to dismiss, the court is permitted to
16 consider "other sources . . . in particular, documents incorporated
17 into the complaint by reference, and matters of which a court may
18 take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights,*
19 *Ltd.*, 551 U.S. 308, 322 (2007).

20     Because the deed of trust is incorporated into the complaint
21 by reference and is a public record, Defendant's request is
22 granted. *See Robertson v. Wells Fargo Home Mortg.*, No. 10-CV-1110-
23 BR, 2011 WL 5157772, at *2 (D. Or. Oct. 28, 2011) ("Public records
24 such as deeds of trust are appropriate subjects for judicial
25 notice.")

26 **II.   Defendant's Rule 12(b)(6) Motion to Dismiss**

27     Plaintiff seeks three claims for relief: (1) breach of
28 contract, seeking damages for loss of reputation; (2) declaratory

FINDINGS AND RECOMMENDATION      5

1  relief, seeking a declaration that the July 2011 foreclosure was
2  invalid; and (3) wrongful foreclosure, seeking damages for
3  emotional distress and loss of reputation, along with punitive
4  damages. (FAC ¶¶ 20-36.)

5      **A.    Breach of Contract (First Claim)**

6          **1.    Count One**

7      Plaintiff has alleged two counts of breach of contract. As to
8  the first count, Plaintiff claims that the deed of trust provides
9  that the lender "[m]ay invoke the power of sale and any other
10 remedies provided by Applicable Law[,]" but Defendant allegedly
11 breached the terms of the deed of trust by failing to comply with
12 Oregon's Trust Deed Act ("OTDA") while foreclosing on her property.
13 (FAC ¶¶ 21 23.) Specifically, Plaintiff claims that ORS 86.735 was
14 violated because "in order to foreclose non-judicially, all
15 assignments of the trust deed by the trustee or the beneficiary
16 must be recorded in the mortgage records in the counties in which
17 the property described in the deed is situated." (FAC ¶ 22.) "The
18 Assignment of Deed of Trust purports to be an assignment solely of
19 the nominee MERS' interest and not an assignment of any beneficial
20 interest in the Trust Deed. Accordingly, not all assignments of the
21 beneficial interest have been recorded in the county records before
22 the trustee sale as required by ORS 86.735." (FAC ¶ 22.)

23          **a.    Whether MERS Qualifies as a**
               **Valid  Beneficiary**
24

25     The crux of Plaintiff's position is that MERS is not a proper
   beneficiary under Oregon law. As Plaintiff states, "the real
26 question is whether MERS meets the definition of a beneficiary
27 under the Oregon Trust Deed Act[.]" (Pl.'s Resp. at 7.) Plaintiff
28

1  further elaborates by stating, "the trust deed was created to
2  secure performance of obligations owed to the Lender, not
3  MERS. . . . [I]f MERS does not meet the statutory definition of a
4  beneficiary because there are no obligations owed to MERS . . . it
5  may not actually be a beneficiary and the property would not be
6  validly foreclosed by advertisement and sale." (Pl.'s Resp. at 8.)

7      If MERS was not a proper beneficiary under Oregon law, this
8  would pose two problems for Defendant. "First, plaintiff argues
9  that if MERS were not the beneficiary, it could not have validly
10 transferred the trust deed to [Defendant] at the outset of the
11 foreclosure process.  Plaintiff contends that the lender is the
12 true beneficiary, not MERS; thus, the attempts by MERS to transfer
13 the trust deed was ineffective." (Def.'s Mem. at 3.)  Second,
14 pursuant to ORS 87.735(1), assignments of a deed of trust by a
15 beneficiary must be recorded in the county record before non-
16 judicial foreclosure can proceed.  "Plaintiff contends that the
17 lender, not MERS, is the true beneficiary, and because the lender
18 did not record any assignment of the deed of trust [Defendant]
19 could not conduct a non-judicial foreclosure." (Def.'s Mem. at 3-
20 4.)

21     Under Oregon law "[b]eneficiary means the person named or
22 otherwise designated in a trust deed as the person for whose
23 benefits a trust deed is given."  OR. REV. STAT. § 86.705 (2009).
24 Here the deed of trust names MERS as the beneficiary. (RJN [11-1]
25 at 2) ("MERS is the beneficiary under this Security Instrument.")
26 While the decisions from this district are split on the issue, I
27 agree with the reasoning of those decisions that find MERS is a
28 proper beneficiary under Oregon law. *See, e.g., Beyer v. Bank of*

FINDINGS AND RECOMMENDATION     7

1  *Am.*, No. CV 10-523-MO, 2011 WL 3359938, at *5 (D. Or. Aug. 2, 2011)

2  (Mosman, J.) (finding MERS is a proper beneficiary under Oregon

3  law).

4      Plaintiff claims, "[i]t is not enough that an entity is simply

5  named or designated in the deed, it must be named or designated as

6  the person actually benefitting from the deed. And that party would

7  be American Broker's Conduit[,]" *i.e.*, the lender. (Pl.'s Resp. at

8  7.)  Plaintiff's deed of trust provides:

9      Borrower understands and agrees that MERS holds only
       legal title to the interests granted by Borrower in this
10     Security Instrument, but, if necessary to comply with law
       or custom, MERS (as nominee for Lender and Lender's
11     successors and assigns) has the right: to exercise any or
       all of those interests, including, but not limited to,
12     the right to foreclose and sell the Property; and to take
       any action required of Lender including, but not limited
13     to, releasing and canceling this Security instrument.

14  (RJN [11-1] at 3) (emphasis in the original).

15      In *Beyer*, as here, the plaintiffs argued that the lenders were

16  the true beneficiaries under a trust deed, not MERS.  *Beyer*, 2011

17  WL 3359938, at *3.  After evaluating a provision of the trust deed

18  identical to the language quoted above, Judge Mosman concluded:

19     This provision grants MERS the right to exercise all
       rights and interest of the lender. One right of the
20     lender is to receive payment of the obligation, so this
       clause must grant the right to MERS as well. However,
21     *the clause is only activated 'if necessary to comply with
       law or custom.' So MERS has the right to receive payment
22     of the obligation, and therefore is designated as the
       beneficiary if two requirements are met: (1) it is
23     necessary to comply with law or custom, and (2) the
       statutes and trust deed do not otherwise prevent MERS
24     from being a beneficiary.*

25     When read in context this clause is triggered when the
       plain terms of the trust deed would be contradictory
26     under local law or custom. *Here, the trust deed
       repeatedly calls MERS the beneficiary, a statement which
27     would not comply with law or custom unless MERS's powers
       were expanded to include the right to receive payment of
28     the obligation.  For this reason, I find the clause is*

FINDINGS AND RECOMMENDATION     8

*triggered, and MERS has the right to receive payment of the obligation.*

*Beyer*, 2011 WL 3359938, at *4 (emphasis added).

Here, as in *Beyer*, the deed of trust repeatedly calls MERS the beneficiary; therefore, the identical provision at issue in this case is triggered, and MERS had the right to receive payment of the obligation. Accordingly, because the trust deed names MERS as the beneficiary and MERS has the right to receive the benefit of the trust deed, I find that MERS was a proper beneficiary under the trust deed.

### b.   Whether All Assignments of the Deed of Trust Were Recorded

"On or about March 14, 2011, an 'Assignment of Deed of Trust' was recorded" which assigned "all beneficial interest in the Trust Deed from MERS to Defendant[.]" (FAC ¶ 18.)   Plaintiff claims "[t]he filed assignment on March 14, 2011, purports only to be an assignment of MERS own interest, which is apparently a 'nominees' interest of the Lender, the actual party for whose benefit the trust deed was given." (Pl.'s Resp at 9.)   According to Plaintiff, in *Hooker v. Nw. Trustee Servs., Inc.*, Civ. No. 10-31110-PA, 2011 WL 2119103 (D. Or. May 25, 2011), Judge Panner noted similar problems with such assignments.   *See id.*, at *5 (explaining that the "assignment states that MERS assigns 'all beneficial interest' in the trust deed to Bank of America.   As explained above, MERS never had any beneficial interest in the trust deed. MERS held only legal title as an agent or nominee[.]")

In this case, unlike *Hooker*, I have found that MERS is both named and designated as the person receiving the benefit, thereby rendering Plaintiff's reliance on *Hooker* unavailing.   *See Beyer*,

FINDINGS AND RECOMMENDATION        9

1  2011 WL 3359938, at *4 (making the same observation and noting that

2  "at least one Oregon court has rejected this argument."); *see also*

3  *James*, 2011 WL 3841558, at *7 ("Plaintiffs fail to explain why MERS

4  cannot act both as a designated beneficiary and a nominee for the

5  lender.").

6       Plaintiffs point out that, "the *Hooker* court was afforded the

7  benefit of reviewing MERS Milestones which demonstrated two

8  additional unrecorded transfers, which Plaintiff has not been able

9  to obtain yet because discovery has not begun." (Pl.'s Resp. at

10 10.)  Reviewing MERS Milestones would not be a benefit, it would be

11 inconsequential because, as Judge Stewart aptly put it,

12      [*Hooker*] relied on a two-page 'MIN Summary and
        Milestones' which is a printout from the MERS® System
13      that tracks the changes in servicing rights and transfers
        of the beneficial interests in the promissory note. This
14      document does not . . . track every 'assignment' of the
        trust deed. It only tracks transfers of the note. As
15      discussed above, transfers of the note must be
        distinguished from 'assignments of the trust deed by the
16      trustee or the beneficiary' referenced in ORS 86.735(1).

17 *James*, 2011 WL 3841558, at *11 (internal citation omitted).  That

18 is to say, the transfers of the note must be distinguished from

19 assignment of the deed of trust because:

20      Nothing in Oregon law requires recording of each
        assignment of the trust deed when the underlying note is
21      transferred. The only recording requirement is found in
        ORS 86.735(1) for all 'assignments of the trust deed by
22      the trustee or the beneficiary' before a non judicial
        foreclosure by advertisement and sale. However, this
23      statute by its express terms only requires the recording
        of assignments by the parties who have a recorded
24      interest in the real property providing security, that
        is, 'the trustee or the beneficiary.'
25
   *Id.* at *11.
26
27      Here, I find that the record does not support Plaintiff's

28 claim that all the necessary assignments were not recorded.

FINDINGS AND RECOMMENDATION    10

Plaintiff's complaint unequivocally states that MERS recorded its assignment to Defendant.  (FAC ¶ 18.)   MERS also recorded its appointment of successor trustee.  (FAC ¶ 13.)   Plaintiff claims its allegations regarding unrecorded assignments are similar to the allegations brought in *Burgett v. Mortgage Elec. Registration Sys.*, No. 09-6244-HO, 2010 WL 4282105 (D. Or. Oct. 20, 2010).  Plaintiff fails to recognize that *Burgett* is clearly distinguishable because, unlike this case, "Plaintiff assert[ed] *several transfers of beneficial rights [] occurred*" and "Defendant fail[ed] to demonstrate proper recording of these and other transfers, if any." *Id.*, at *3 n.2 (emphasis added).  Plaintiff does not claim several transfers of beneficial rights have occurred here, nor does Plaintiff contest whether the assignment from MERS, the beneficial transfer at issue, was recorded.

Because I have determined that MERS is a valid beneficiary under Oregon law, MERS's role in the foreclosure process did not defeat its validity.   Accordingly, Plaintiff's first count for breach of contract should be dismissed with prejudice because it cannot "possibly be cured by the allegation of other facts[.]" *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)).

### 2. Count Two

In the second count, Plaintiff claims "Defendant breached the implied covenant of good faith and fair dealing when it instructed plaintiff to stop making payments so that defendant could correct [p]laintiff's mortgage and then claimed the plaintiff was in default for failure to make those payments." (FAC ¶ 26.)

Defendant contends that Plaintiff's second count[2] for breach of contract should be dismissed because it appears to seek "impermissible loss-of-reputation damages." (Def.'s Mem. at 7.) Defendant relies primarily upon Judge Hernandez's decision in *Rapacki v. Chase Home Fin. LLC*, No. CV-11-185-HZ, 2011 WL 2490658 (D. Or. June 21, 2011). There, the court recognized "[a] claim asserting a breach of the implied covenant of good faith and fair dealing is a contract claim under which reputation, emotional distress, and punitive damages are unavailable." *Id.* at *6. Defendant also cites *Rice v. Cmty. Health Ass'n*, 203 F.3d 283 (4th Cir. 2000), for the proposition that, "Courts have universally rejected claims for damages to reputation in breach of contract actions reasoning that such damages are too speculative and could not reasonably be presumed to have been contemplated by the parties when they formed the contract." *Id.* at 288.

Although I agree with Defendant regarding the availability of such damages here, it appears Plaintiff is attempting to plead an equitable estoppel claim. (*See* FAC ¶ 27) ("Defendant should be estopped from asserting that plaintiff was in default whe[n] plaintiff merely complied with Defendant's instructions.") Plaintiff's response brief confirms as much, claiming to have alleged "facts sufficient under the theory of equitable estoppel." (Pl.'s Resp. at 5.) Plaintiff also confirmed this interpretation at oral argument by failing to present any argument regarding a

---

[2]   Defendant claims Plaintiff's first count for breach of contract is similarly deficient. (Def.'s Mem. at 7.) This argument was not addressed, seeing as Plaintiff's first count was dismissed on other grounds.

claim for breach of the implied covenant of good faith and fair dealing and, instead, characterizing it as an equitable estoppel claim.

The doctrine of equitable estoppel is "intended to protect those who materially change their position in reliance upon another's acts or representation." *Sawyer v. Recontrust Co.*, No. CV-11-292-ST, 2011 WL 2619517, at *7 (D. Or. May 27, 2011) (quoting *Bash v. Fir Grove Cemeteries, Co.*, 292 Or. 677, 687 (1978)).  The elements of estoppel are as follows:

> (1) there must be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it.

*Id.* (citation omitted).  Estoppel also requires that "there was a right of reliance upon the act of the party sought to be estopped, and such reliance was reasonable." *Id.* (quoting *Bash*, 282 Or. at 687).

Plaintiff claims the aforementioned elements are met in this case, but the FAC does not specifically set forth a claim for equitable estoppel.  This court has previously dismissed a breach of contract claim on similar grounds. *See Sawyer*, 2011 WL 2619517, at *7-8 (dismissing breach of contract claim in a wrongful foreclosure case as a failed attempt to plead an equitable estoppel claim, with leave to replead).

Because Plaintiff may be able to plead an equitable estoppel claim if given the opportunity to do so, Plaintiff's second count for breach of contract should be dismissed with leave to replead. If Plaintiff's repleaded claim is styled as a contract claim for

FINDINGS AND RECOMMENDATION    13

1  relief based on promissory estoppel,[3] it is unlikely that

2  reputation, emotional distress, and punitive damages would be

3  available.

4  **B.   Declaratory Relief (Second Claim)**

5       In Plaintiff's second claim for relief, it is alleged that the

6  foreclosure sale was improper for the following reasons: (1) "The

7  mortgage is not a Deed of Trust in compliance with ORS 86.705-

8  86.795 and may not be foreclosed by a non-judicial foreclosure

9  because it purports to name MERS as a beneficiary in addition to

10 the lender who was the facial and factual beneficiary under the

11 loan secured by the mortgage"; (2) "The Assignment of Deed of Trust

12 purports to be an assignment solely of the nominee MERS's interest

13 and not an assignment of any beneficial interest in the Trust Deed.

14 Accordingly, not all assignments of beneficial interest have been

15 recorded in the county records before the trustee sale as required

16 by ORS 86.735"; and (3) "The July 2010 foreclosure was erroneously

17 conducted and the Correction of Errors document was not validly

18 executed to set aside the foreclosure as it was executed months

19 before the sale occurred." (FAC ¶ 29.)  As a result, Plaintiff

20 asks the court to declare the July 27, 2011 foreclosure sale void

21 and for "a determination as to the amount owed on the note." (FAC

22 ¶¶ 32-33.)

23      For the reasons previously discussed, Plaintiff's MERS-related

24 allegations underlying this claim are not consistent with my

25

26 _____

27  [3]  *See Arken v. City of Portland*, 351 Or. 113, 140, 263 P.3d
   975 (2011)(evaluating "plaintiffs' second count of their contract
28 claim for relief based on promissory estoppel").

FINDINGS AND RECOMMENDATION      14

1  recommendations.  I turn then to Plaintiff's allegation regarding

2  the Correction of Errors document.  Defendant argues, "even if the

3  Correction of Errors document were not validly executed, the fact

4  remains that it *had* been recorded (in September 2010) and

5  *had* operated to set aside the July 2010 foreclosure before the July

6  2011 foreclosure.  Thus, as a matter of undisputed fact, there *was*

7  *no* prior foreclosure on the books that would have prevented the

8  July 2011 foreclosure." (Def.'s Mem Supp. at 9.)

9       Plaintiff, on the other hand, claims that, although the

10 Correction of Errors document acknowledged the erroneous proceeding

11 which had taken place, the damage had already been done, *e.g.*,

12 "Plaintiff lost title to her property."  (Pl.'s Resp. at 11.)

13 "Furthermore, if the before-the-foreclosure executed Correction of

14 Errors document did not effectively rescind the foreclosure, then

15 the July 2010 foreclosure is still in effect[.]" (Pl.'s Resp. at

16 11.)  Expressing uncertainty regarding the legal authority upon

17 which she relies, Plaintiff goes on to state:

18       It is not clear whether a lender in Oregon can
         erroneously foreclosure a trust deed, unilaterally
19       rescind the foreclosure, and start a new foreclosure, as
         Defendant has done here.  ORS 86.722 does allow such
20       documents to be recorded, but that statute does not state
         what the effect is on the mortgage.  It is not clear
21       whether the rescission automatically reinstated
         Plaintiff's mortgage or what amount was owed by
22       Plaintiff. Given the inherent problems in determining
         such amounts and Defendant's creation of potential title
23       issues, it is questionable whether a subsequent
         foreclosure could have been carried out non-judicially or
24       whether a judicial foreclosure of the trust deed was
         necessary; Plaintiff submits that a judicial foreclosure
25       should have been brought instead.

26 (Pl.'s Resp. at 12.)

27       Pursuant to ORS 86.722(1), "[t]o correct an error concerning

28

FINDINGS AND RECOMMENDATION    15

the status or effect of a recorded trust deed, a person [must] present an instrument to the county clerk" which indicates that the "original trust deed is hereby reinstated", or that the "Trustee's Deed is hereby set aside as though the erroneous instrument had not been recorded." OR. REV. STAT. § 86.722(1) (2009). Here the Correction of Errors indicated the latter. (FAC ¶ 16.) Upon being recorded, this instrument rendered the July 28, 2010 Trustee's Deed conveyed to Defendant null and void. I therefore find it unlikely any title issues were presented by this transaction. In essence, I agree with Defendant that nothing was on the books precluding the July 2011 foreclosure sale.

Moreover, aside from mere speculation, Plaintiff has cited no authority in support of their position that a judicial foreclosure proceeding should have been brought. Nor could Plaintiff's counsel provide an answer to this question during oral argument. Nothing in the record indicates that the foreclosing parties were deprived of the right to commence a nonjudicial foreclosure.

Accordingly, I find that Plaintiff has failed to allege a plausible claim for declaratory relief regarding the validity of the trustee's sale. However, Plaintiff should be granted leave to replead this claim because the allegations underlying her estoppel claim could potentially support a claim for declaratory relief.

### C.  Wrongful Foreclosure (Third Claim)

Lastly, Defendants point out, "Plaintiff's third claim for relief seeks tort damages-- emotional distress, reputation damages, and punitive damages-- caused by [Defendant]'s alleged knowing 'wrongful foreclosure' of her property." (Def.'s Mem. Supp. at 9)

FINDINGS AND RECOMMENDATION    16

1  (citing FAC ¶¶ 34-36, 37(3)).  Defendant believes this claim fails
2  due, in part, to the fact that wrongful foreclosure is not an
3  actionable tort under Oregon law, citing Judge Hernandez's decision
4  in *Rapacki*.  (Def.'s Mem. Supp. at 9.)   Thus, as in *Rapacki*,
5  Defendants requests that the court dismiss Plaintiff's wrongful
6  foreclosure claim.

7      In *Rapacki*, a successor trustee ("NWTS") moved to dismiss a
8  wrongful foreclosure claim, arguing the plaintiff-mortgagor failed
9  to plead a viable theory of recovery "supporting his requests for
10 reputation and emotional distress damages, the loss of his house
11 and possessions, and punitive damages." *Rapacki*, 2011 WL 2490658,
12 at *2.  Judge Hernandez recognized there were "few, if any, Oregon
13 cases discussing a tort of wrongful foreclosure."  *Id.* at *4.
14 After throughly analyzing the issue, Judge Hernandez determined
15 that the case law did "not support the claim plaintiff asserts
16 here."  *Id.* at *6.

17     Plaintiff attempts to distinguish *Rapacki* on the grounds that
18 (1) it was the successor trustee, "who is not moving to dismiss in
19 this case[,]" that was found not liable for wrongful foreclosure
20 and (2) the plaintiff-mortgagor's wrongful foreclosure claim
21 against the lender is still pending in that case.  (Pl.'s Resp. at
22 12.)  Both arguments lack merit. My reading of *Rapacki* is that the
23 court discussed the validity of a tort theory of wrongful
24 foreclosure in a general sense, the fact that it was brought
25 against a successor trustee played little to no role in *Rapacki's*
26 holding. As to Plaintiff's second contention, I simply note that,
27 technically, all claims are pending until a dispositive motion is
28

FINDINGS AND RECOMMENDATION    17

1  filed and a ruling has been made.  This does not suggest, one way

2  or the other, whether Plaintiff has a viable cause of action.

3      Citing *Hulse v. Ocwen Fed. Bank*, 195 F. Supp. 2d 1188 (D. Or.

4  2002), *Rinehart v. OneWest Bank, FSB*, No. CV-10-6331-AA, 2011 WL

5  1311839 (D. Or. Apr. 1, 2011), and *McCoy v. BNC Mortg., Inc.*, 446

6  B.R. 453 (Bankr. D. Or. 2011), Plaintiff claims "[o]ther courts in

7  this circuit have allowed such claims to proceed." (Pl.'s Resp. at

8  12-13.)  I find this argument unavailing considering Plaintiff's

9  counsel raised this same argument, citing these very cases in

10 *Rapacki*.    Judge Hernandez concluded, "[t]he cases cited by

11 plaintiff refer to 'wrongful foreclosure' only in passing . . . and

12 *contain no discussion of the validity of the claim as a tort claim*

13 *for damages*.  They are of little assistance in determining whether

14 the claim alleged in this case is viable." *Id.* at *6 (emphasis

15 added).  I agree.

16     Plaintiff proclaims, "[t]he point is that Plaintiff has

17 brought an action in tort for the loss of her property due to the

18 acts of defendants. . . . The tort does not need a label but

19 wrongful foreclosure seems to fit." (Pl.'s Resp. at 13.)  This

20 argument overlooks the fact that the damages Plaintiff seeks are

21 derived from the availability of some claim.  If Oregon does not

22 recognize the tort of wrongful foreclosure, then Plaintiff must

23 identify what claim recognized in Oregon will allow recovery of

24 emotional distress, reputation, and punitive damages under these

25 circumstances.

26     Plaintiff has not identified a viable theory and, because

27 there is no binding precedent from the Oregon Supreme Court,

28

FINDINGS AND RECOMMENDATION    18

1  Plaintiff claims "the federal court must predict how the Oregon
2  Supreme Court would resolve the issue and then apply the law
3  accordingly." (Pl.'s Resp. at 13.) I find *Cervantes v.*
4  *Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011),
5  instructive here. In *Cervantes*, after recognizing that Arizona
6  state courts have not yet recognized a substantive wrongful
7  foreclosure claim, the Ninth Circuit stated, "[a]lthough a federal
8  court exercising jurisdiction is at liberty to predict the future
9  course of a state's law, plaintiffs choosing the federal forum are
10 not entitled to trailblazing initiatives under state law." *Id.* at
11 1043 (internal quotation marks and citations omitted; alterations
12 deleted). Having chosen this federal forum, Plaintiff's limited
13 citations do not persuade me that Oregon courts would countenance
14 the wrongful foreclosure claim Plaintiff advocates.

15     Finally, in this case, as in *Rapacki*, Plaintiff argues that
16 his tortious wrongful foreclosure claim should be viewed as a claim
17 for conversion. *Id.* at *7.[4] Plaintiff argues that, "[i]n cases
18 involving personal rather than real property, the Oregon Supreme
19 Court has decided that action may be brought for wrongful
20 foreclosure of a security interest in personal property by way of
21 conversion. . . . It follows that a similar action could be brought
22 against a lender who improperly forecloses a security interest in

23

24     [4] Plaintiff's response brief concludes by stating,
25 "Plaintiff's allegations are to be taken as true at this stage.
   Plaintiff has sufficiently pled her claims against Defendant for
26 breach of contract for Defendant's failure to abide by the trust
   deed and [OTDA], *in tort for Defendant's wrongful exercise of*
27 *control over her property*, and for declaratory relief." (Pl.'s
   Resp. at 12-13) (emphasis added).
28

FINDINGS AND RECOMMENDATION    19

1  a borrower's home." (Pl.'s Resp. at 13.)  I disagree.  Claims
2  based on an alleged foreclosure of real property cannot be
3  considered conversion claims because real property is not a
4  chattel. *See Rapacki*, 2011 WL 2490658, at *7 (stating, "[t]he real
5  property subject to the trust deed is not a chattel and plaintiff's
6  claim as to the real property cannot be construed as a claim for
7  conversion.")

8      In short, Plaintiff's tortious wrongful foreclosure claim
9  should be dismissed with leave to replead if plaintiff can identify
10 a cause of action Oregon recognizes which provides for the damages
11 she seeks.

**Conclusion**

13     For the reasons stated above, Defendant's Rule 12(b)(6) motion
14 (dkt. #9) should be GRANTED. Plaintiff should be given 30 days in
15 which to file an amended complaint against Defendant, curing the
16 deficiencies noted above.

17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28

FINDINGS AND RECOMMENDATION     20

**Scheduling Order**

The Findings and Recommendation will be referred to a district judge.   Objections, if any, are due **March 2, 2012.**   If no objections are filed, then the Findings and Recommendation will go under advisement on that date.   If objections are filed, then a response is due **March 19, 2012.**  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 13th day of February, 2012.

/s/ Dennis J. Hubel

_____

Dennis James Hubel
Unites States Magistrate Judge

FINDINGS AND RECOMMENDATION      21